```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

```
EDWARD SKYPALA, Individually  :
and as a representative on     :
behalf of others similarly     :
situated                       :    HONORABLE JOSEPH E. IRENAS
                               :
              Plaintiff,       :    CIV. NO. 08-5867 (JEI/JS)
                               :
     v.                        :
                               :
MORTGAGE ELECTRONIC            :    **OPINION**
REGISTRATION SYSTEMS, INC.,    :
M&T MORTGAGE CORP., ZUCKER     :
GOLDBERG, AND ACKERMAN, and    :
JOHN DOE SERVICERS 1-100, and  :
JOHN DOE LAW FIRMS 1-100       :
                               :
              Defendants.      :
```

**APPEARANCES:**

LAW OFFICE OF LEWIS ADLER
By:  Lewis G. Adler, Esq., Roger C. Mattson, Esq.
26 Newton Avenue
Woodbury, NJ 08096
     Counsel for Plaintiff

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS
By:  Carol Ann Slocum, Esq.
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002
     Counsel for Defendants Mortgage Electronic Registration
Systems, Inc. and M&T Mortgage Corp.

CONNELL FOLEY LLP
By:  Karen Painter Randall, Esq., Andrew C. Sayles, Esq.
85 Livingston Avenue
Roseland, NJ 07068
     Counsel of Defendant Zucker, Goldbreg, and Ackerman


**IRENAS**, Senior District Judge:

     This case is substantially similar to two other cases

1

recently addressed by this Court:  *Rivera v. Washington Mutual, et al.*, --- F. Supp. 2d ----, 2009 WL 2001175 (D.N.J. July 10, 2009) (Irenas, S.D.J.) and *Martino v. Everhome Mortgage, et al.*, --- F. Supp. 2d ----, 2009 WL 2365160 (D.N.J. July 31, 2009) (Irenas, S.D.J.).  Plaintiff (and putative class representative) Edward Skypala, like the Riveras and Martinos, asserts that the defendants, a mortgage lender, its servicer, and its law firm, charged and collected "various fees not authorized by the loan documents or applicable law" and "overcharging defaulting borrowers of residential mortgages."  (Compl. ¶ 14.)  While this case was filed several months before *Rivera* and *Martino*, it was nonetheless filed by the same attorneys and the vast majority of the allegations are the same.[1]

---

[1] Plaintiff, through Messrs. Adler and Mattson, filed a nearly identical complaint in August, 2008, under docket number 08-4089 (RBK), which, after an unsuccessful attempt to amend, was dismissed on September 3, 2008, pursuant to Federal Rule of Civil Procedure 12(h)(3).  Mr. Mattson filed the instant Complaint in the Superior Court of New Jersey, Camden County, Law Division on September 24, 2008.  Defendants then removed the case to this Court on December 1, 2008, pursuant to 28 U.S.C. § 1446.

Defendants' Notice of Removal asserts that jurisdiction is proper based on both 28 U.S.C. § 1332(d) and 28 U.S.C. § 1331. As discussed length in *Rivera,* the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  The Court hereby incorporates by reference *Rivera's* discussion of this Court's CAFA jurisdiction, *see* 2009 WL 2001175 at *5-6, without repeating it here.

Defendants also argue that there is federal question jurisdiction because the complaint asserts that the defendants violated the Federal Trade Commission Act ("FTCA").  15 U.S.C. § 45(a).  However, the FTCA violation is pled as a predicate act forming the basis for Plaintiff's New Jersey Consumer Fraud Act ("NJCFA") claim.  N.J. Stat. Ann. § 56:8-2 *et seq.*  No federal

Presently before the Court are Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and M&T Mortgage Corp.[2] ("M&T")'s Motion to Dismiss, and Defendant Zucker, Goldbreg, and Ackerman[3] ("Zucker")'s Motion to Dismiss.  The Court has reviewed the submissions of the parties, and for the reasons set forth below, Defendants' Motions will be granted.

## I.

As the Court has noted in the two aforementioned cases, the factual allegations in this Complaint, along with the others filed by Plaintiff's counsel, are sparse, and at times contradictory.[4]  Nonetheless, the Court will endeavor to distill

_____

cause of action is pled and Plaintiff's claims arise under the NJCFA, not federal law.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Moreover, the FTCA does not create a private right of action.  *American Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992); *Fulton v. Hecht,* 580 F.2d 1243 (5th Cir. 1978)*, cert. denied,* 440 U.S. 981 (1979); *Alfred Dunhill, Ltd. v. Interstate Cigar Corp.,* 499 F.2d 232 (2nd Cir. 1974); *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C. Cir. 1973)*; Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir. 1973).

[2] While the Complaint names M&T Mortgage Corp., the Notice of Removal and the instant Motion were filed by M&T Bank, M&T Mortgage Corp.'s successor by merger.

[3] According to it's briefs, the firm's proper name is Zucker, Goldberg & Ackerman, LLC.  (Zucker Br. at 1.)

[4] *See Martino*, 2009 WL 2365160, at *1 ("Thus, it is fair to say, as the Court did in *Rivera*, that the Complaint in this case is 'hopelessly muddled, misstated, and mangled.'") (quoting *Rivera*, 2009 WL 2001175, at *1).

the factual history based on Plaintiff's Complaint and the exhibits attached thereto.

Plaintiff executed the mortgage and note at issue in this case on June 6, 1976.  (Compl. ¶ 5.)  The loan was originated by Blau Mortgage Company, a non-party to this suit.  (Id.)  On September 12, 2006, M&T sent Plaintiff a Notice of Intention to Foreclose.  (Id. ¶ 6, Id. Ex. A.)  Plaintiff alleges that M&T was the servicer of the loan on behalf of MERS.[5]  (Id. ¶ 7.) Plaintiff then requested a payoff statement, which was sent by Zucker, on behalf of M&T and MERS, on November 27, 2006.  (Id. ¶ 8, Id. Ex. B.)  The payoff amount, due by December 27, 2006, included $111,017.07 payable to M&T and $2449.00 payable to Zucker.  (Id. ¶ 10, Id. Ex. B.)  The $2449.00 was comprised of $945.00 in fees, and $1504.00 in costs.  (Id.)  Plaintiff alleges that M&T participated in the preparation of the payoff statement. (Id. ¶ 9.)

Plaintiff further alleges that he paid the sums demanded in full on or about November 14, 2006.[6]  (Id. ¶ 11.)  Defendants then discharged the mortgage (Id. ¶ 13), and no foreclosure action was filed.  (Id. ¶ 12.)

_____

[5] There are no factual allegations in the Complaint as to how Plaintiff's mortgage came to be owned by MERS.

[6] The Court notes, however, that this date is likely an error as the payoff statement was not issued until two weeks later, on November 27, 2006.

4

The Complaint asserts the following claims against M&T and MERS, all arising out of the alleged unauthorized fees it charged and various other overcharges: (1) breach of contract; (2) negligence; (3) breach of duty of good faith and fair dealing; (4) unjust enrichment;[7] (5) "unfair and deceptive assessment and collection of fees"; (6) violation of the Fair Foreclosure Act, N.J. Stat. Ann. § 2A:50-57(b)(3) ("FFA"); (7) violation of New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a); (8) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* ("NJCFA"); and violation of New Jersey's Truth In Consumer Contracts, Warranty and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14 *et seq.*[8]  Zucker is a Defendant to claims 2 through 5 only.[9]

Plaintiff proposes three statewide classes identical to those proposed in *Martino* and *Rivera*, except that the proposed class defendants are MERS (Compl. ¶ 20), M&T (Id. ¶ 21), and Zucker (Id. ¶ 22).  *See Martino*, 2009 WL 2365160, at *3 n.9

---

[7] In his Sur-reply Brief, dated March 10, 2009, Plaintiff voluntarily withdraws his claim for unjust enrichment.  (Pl. Sur-reply Br. at 4.)  Therefore, Count VI will be dismissed.

[8] Count XII of the Complaint, titled "John Doe Parties," merely lists other potential unnamed defendants, but does not actually assert a cause of action.  Accordingly, Count XII will be dismissed.

[9] In his Opposition Brief, Plaintiff consents to the dismissal of Zucker from the "unfair and deceptive assessment and collection of fees" claim contained in Count VII.  (Pl. Op. Br. at 13.)  Therefore, Count VII will be dismissed as to Zucker.

(noting that the proposed statewide classes are virtually identical to those in *Rivera*).

As previously noted, M&T, MERS, and Zucker presently move to dismiss the Complaint in its entirety.  For the reasons that follow, their Motions will be granted.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

6

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.

As done in *Rivera* and *Martino*, the Court begins with the wrongful conduct alleged in the Complaint:

> At all times relevant hereto, MERS, M&T and Zucker have engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics in which the Defendants have been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:
>
> > a)   they charged attorneys fees and costs in excess of those actually incurred; Specifically, in the instant case no complaint had been filed.  $910 represents the total fee which would have been charged for the foreclosure proceeding by Zucker.
> >
> > b)   costs of suit charged to the Plaintiff and class were excessive in violation of statute and court rule; Specifically, R 4:42-10 limits the taxable costs for searches at a minimum of $75 to 1% of the amount due but in no case more than $500. In the instant case the amount allowed would be $500.
> >
> > c)   recording fees charged were excessive of the actual fee; i.e. to file and discharge a lis pendens the fee was $60.00
> >
> > d)   Overcharging for the service of process. The statutes and court rules limit the reimbursement to a maximum of $35 per defendant.
> >
> > e)   Charging the borrower for obtaining a certificate of regularity which is not a fee which can be charged to a borrower.

7

        f)   In addition  the  Plaintiff  contends  that  the
defendants overcharged the class as follows:

        i.   over   charging   [sic]   of   sheriff's
commissions  by  failing  to  properly  credit
deposits;

        ii.  charging excessive interest by continuing
to charge the contract rate after a judgment
of  foreclosure  was  entered  when  entitled  to
the judgment interest rate;

(Compl. ¶ 14.)[10]

## A.

    Like *Rivera* and *Martino*, the documents attached to the instant Complaint demonstrate that there was no violation of New Jersey Court Rule 4:42-9(a)(4).  Likewise, there are no allegations in the Complaint to support a claim that New Jersey Court Rule 4:42-10(a) was violated.  Accordingly, Count IX (entitled "New Jersey State Court Rule") fails to state a claim, and will be dismissed.[11]

    It  follows,  therefore,  that  all  the  claims  based  on  the alleged  violation  of  Rule  4:42-9,  namely  the  FFA  claim  (Count VIII),  and  the  NJCFA  claim  (to  the  extent  it  is  based  on  alleged

---

    [10] The  Court  notes  that  the  allegations  in  paragraph  14(f) regarding sheriff's commissions and judgments of foreclosure are in  clear  contradiction  to  paragraph  12  which  explicitly  states that no foreclosure action was filed in the instant case.

    [11] Alternatively,  as  this  Court  held  in  *Rivera*,  2009  WL 2001175,  at  *8  n.18,  there  is  no  private  right  of  action  under these Rules.  *See also Martino*, 2009 WL 2365160, at *4.

violations of Rule 4:42-9 and the FFA)[12], also fail.

The payoff statement, Exhibit B to the Complaint, requires Plaintiff to pay $945 in fees and $1504 in costs. The calculations of these fees and costs appear to be correct. Rule 4:42-9(a)(4) instructs:

> on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3½%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%; provided that the allowance shall not exceed $7,500. . . . In no case shall the fee allowance exceed the limitations of this rule.

The Rule applies in this case as follows: 3½% of the first $5,000 equals $175; 1½% of the next $5,000 equals $75; and 1% of the remaining $101,017.07 equals $1,010.17; $175 + $75 + $1,010.17 = $1,260.17. The amount of fees charged to Plaintiff was only $945, which is clearly less than the $1,260.17 allowable by Rule 4:42-9(a)(4).[13]

As to the FFA claim (Count VIII), that statute merely states that, in order to cure a default, debtors shall "pay or tender

---

[12] Count X is entitled "New Jersey Consumer Fraud Act," but violations of the CFA are also alleged in Counts VII (entitled "unfair and deceptive assessment and collection of fees"), VIII (entitled "Fair Foreclosure Act"), and IX (entitled "New Jersey State Court Rule").

[13] While Plaintiff does not make any particular allegations regarding the "costs" paid to Zucker, the Court notes that the maximum allowable amounts of the costs alleged in paragraph 14 of the Complaint total $1,505, $1 less than the amount actually sought by Zucker.

court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey." N.J. Stat. Ann. § 2A:50-57(b)(3). Because Plaintiff's own submissions demonstrate that he did not pay fees that exceeded the limits established by Rule 4:42-9(a)(4), there can be no FFA claim, and Count VIII will be dismissed.[14]

Lastly, as there has been no violation of New Jersey Court Rules or the FFA, there can be no NJCFA claim based on any such violations;[15] therefore, the NJCFA claim, insofar as based on alleged violations of Rule 4:42-9 or the FFA,[16] will also be dismissed.

---

[14] Alternatively, the Fair Foreclosure Act claim must be dismissed because the Act creates no private right of action. See *Martino*, 2009 WL 2365160, at *5 n.13; *Rivera*, 2009 WL 2001175, at *8 n.19.

[15] "In analyzing claims under the CFA, . . . there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). The Court has held that Plaintiff has not pled a violation of New Jersey Court Rule 4:42-9 or the FFA, therefore he has not pled the first element of his prima facie NJCFA case.

[16] The Complaint labels Count X as the "New Jersey Consumer Fraud Act" claim, but also assets violations of the NJCFA in Counts VII (entitled "unfair and deceptive assessment and collection of fees"), VIII (entitled "Fair Foreclosure Act"), and IX (entitled "New Jersey State Court Rule"). To the extent any of these Counts are based on alleged violations of Rule 4:42-9 or the FFA, they will be dismissed.

**B.**

The Court next addresses the remainder of Plaintiff's NJCFA claim in Count X, which is apparently based both on Count VII alleging "unfair and deceptive assessment and collection of fees" in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a),[17] as well as a $758 overcharge alleged in paragraph 74, and the other wrongful conduct alleged in paragraph 14. As already explained, the fees assessed were not in violation of New Jersey Court Rule 4:42-9, and therefore there can be nothing unfair or deceptive about that fee as a matter of law.

Plaintiff also alleges he "suffered an ascertainable loss of at least $758 calculated based on the following overcharges: $758 for attorneys fees; as the other charges were not itemized it is likely there are other charges as well." (Compl. ¶ 74.) No where in either the Complaint, nor Plaintiff's brief is any explanation offered as to how this figure was reached. After examining the two Exhibits attached to the Complaint, the Court can only speculate on how Plaintiff has calculated the $758 figure quoted above. Plaintiff appears to have concluded that the $85.04 in "Late Charges" and $100 in "Other Charges" shown on Exhibit A were the

---

[17] The statute declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The Complaint does not assert a claim arising under 15 U.S.C. § 45(a), and even if it did, there is no private right of action under this statute. *See Rivera*, 2009 WL 201175, at *8 n.21 and authorities cited therein.

only fees that could have appropriately been charged, and therefore subtracted that amount, $185.04, from the fees assessed by Zucker, $945, shown on Exhibit B, to reach an overcharge of $758.[18] Plaintiff's basis for taking figures from two unrelated documents, sent by different Defendants, without any explanation, escapes reason, and is clearly not a sufficient basis for an allegation of fraud.[19] As such, any claim based on this alleged $758 overcharge fails to state a claim.  Furthermore, the statement that "as the other charges were not itemized it is likely there are other charges as well," clearly fails to satisfy the pleading requirements set forth in *Iqbal*.

To the extent the NJCFA claim is based on the other alleged wrongful conduct on paragraph 14 of the Complaint--namely, the overcharging of various fees, failing to properly credit deposits, and charging excessive interest after a judgment of foreclosure was entered (*see* Compl. ¶ 14(a)-(e), (f)(I), (f)(ii), quoted *supra* at pp. 7-8)--these allegations are also insufficient as a matter of law.

------------------------

[18] The Court notes that $945 less $185.04 is in fact $759.96, and not $758.  However, having carefully examined the Complaint and the attached Exhibits, the Court concludes that, while misguided, this can be the only conceivable basis for Plaintiff's allegation.

[19] Federal Rule of Civil Procedure 9(b) requires that fraud be plead with particularity, but nothing in this Complaint is particular.  Indeed, the fact that it is substantially similar to at least four other complaints before this Court is the antithesis of particular.

At no point in the Complaint does Plaintiff allege that he actually paid the fees discussed in paragraph 14(a) through 14(e). However, as the Court has already noted in footnote 13, *supra*, the maximum allowable total of these fees is still $1 less than the "costs" owed to Zucker in the payoff statement.  (Compl. Ex. B.) Therefore, even if the "costs" do represent the specific fees raised in paragraph 14, and Plaintiff had actually alleged that these were in fact the costs that he paid, the Complaint simply fails to allege that Plaintiff was in fact overcharged.

With regard to the last two allegations, as noted in footnote 10, *supra*, the Complaint contains no allegations that a sheriff's commission was ever paid at all, and explicitly states that there was never a foreclosure action.  Given that the Plaintiff specifically alleges the events underlying this wrongful conduct did not take place, it would be impossible for the alleged conduct to support a claim of consumer fraud.

To reiterate, with respect to all of the alleged wrongful conduct, the Complaint does nothing more than plead discrepancies between two documents from two different sources, and forces the Court to engage in arithmetic exercises, and parse blatantly contradictory pleadings in an attempt to divine Plaintiff's alleged injury.  The mere fact of a discrepancy is insufficient to support an inference of unlawful conduct by Defendants.  Accordingly, all claims based on this alleged conduct must be dismissed.

**C.**

Count XI asserts that M&T and MERS violated New Jersey's Truth in Consumer Contract, Warranty & Notice Act ("TCCWNA").   This count also fails to state a claim.

The TCCWNA provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business . . . enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the . . . the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.  A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer.  N.J. Stat. Ann. § 56:12-17.

Assuming that the mortgage and note are "consumer contracts" to which the TCCWNA applies, Plaintiff has not identified which provisions of either document allegedly violate a clearly established right of Plaintiff or responsibility of M&T or MERS.[20]

Accordingly, the TCCWNA claim will be dismissed.[21]

**D.**

---

[20] The Court also assumes without deciding that the TCCWNA applies to M&T and MERS even though it was not the lender who originally entered into the contracts with Plaintiff.  *See* Note 5 *supra*.

[21] *See Martino*, 2009 WL 2365160, at *7; *Rivera*, 2009 WL 2001175, at *11.

14

The last remaining claim against only M&T and MERS is Count One, alleging breach of contract.  However, the Complaint does not identify the provisions Plaintiff asserts were breached.  Only two paragraphs of this Count vaguely allude to a breach of contract.  The Complaint merely alleges that:

> M&T and MERS have imposed or collected amounts that are not due and owning by contract or applicable law including interest, default related fees, costs of suit, attorneys fees and other charges.
> . . .
> M&T and MERS have breached its contracts with Plaintiff and members of the class.  Specifically, the note and mortgage only allow M&T and MERS to be reimbursed for actual expenses incurred.  The note and mortgage make no provision for M&T and MERS to receive any money in excess of the amount incurred.

(Compl. ¶¶ 36, 38.)[22]

As the Court has already discussed at considerable length, the Complaint simply fails to adequately allege that any New Jersey Court Rules or statutes were violated.  Accordingly, to the extent Plaintiff's breach of contract claim is based on that alleged wrongful conduct, it must be dismissed.  Furthermore, there is nothing specific about Plaintiff's allegation.  Plaintiff does not point to any provision of the contract "specifically", nor can the Court discern, based on the pleadings, what amounts M&T or MERS

---

[22] Paragraph 37 states:  "M&T and MERS failed to disclose in advance to the Plaintiff the amount of any fees or costs which may be charged to him in connection with her [sic] mortgage." While this allegation has seemingly little, if anything, to do with a breach of contract, the Court will note counsel's confusion of his client's gender as yet another of the many inconsistencies within the Complaint.

might have overcharged, or what "amount [M&T or MERS] actually incurred." (Id.) Therefore, the remainder of the Plaintiff's breach of contract claim, if any, must be dismissed for failure to plead sufficient facts.

### E.

Count IV of the Complaint alleges negligence against M&T, MERS, and Zucker. M&T and MERS assert that the negligence claim is barred by the economic loss doctrine. The Court agrees. Plaintiff and M&T and MERS were parties to a contract, namely the mortgage and note. Plaintiff's claims are based on allegedly improper and illegal payments arising out of the parties' contractual relationship.

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002). If a defendant "owe[s] a duty of care separate and apart from the contract between the parties," a tort claim such as negligence may lie. *Id.* at 314. But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort. *Id.* at 316-17.

Plaintiff argues, "[t]he instant case is more than about the loan. The impact to [Plaintiff] concerns his credit worthiness,

the emotional upset from the Defendants' egregious actions and possible loss of his home in the foreclosure in addition to any contract damages." (Pl. Br. at 7.)[23]   With respect to M&T and MERS's actions having an impact on Plaintiff's credit worthiness, the Court fails to see how such harm could plausibly result from Defendants' alleged assessment and collection of unauthorized fees (aside from the fact that Plaintiff has not pled such an injury in the Complaint).   Plaintiff admits that he defaulted on his mortgage.   The Court fails to see how *paying* allegedly excessive fees in connection with curing his default would negatively impact Plaintiff's credit.   Moreover, even if M&T and MERS's alleged actions could somehow affect Plaintiff's credit, there are other statutory remedies available to Plaintiff; a negligence cause of action is not the appropriate vehicle to remedy such an injury.

With regard to Plaintiff's argument that M&T or MERS's actions caused emotional distress, it is axiomatic that a plaintiff may not recover for emotional distress caused by a defendant's alleged breach of contract[24]; such a proposition lies at the heart of the

---

[23] The Court notes that this quote is essentially identical to the briefs quoted in *Rivera,* 2009 WL 2001175, at *10 and *Martino*, 2009 WL 2365160, at *8.

[24] *See* Restatement (Second) of Contracts § 353 and comment a ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. . . . Damages for emotional disturbance are not ordinarily allowed.").

economic loss doctrine.  M&T and MERS owed no independent duty to Plaintiff.  Accordingly, the negligence claim against M&T and MERS will be dismissed.

The negligence claim against Zucker, however, is a different matter, as Plaintiff had no contract with it.  Zucker asserts that the negligence claim against it must be dismissed because it had no duty to Plaintiff.  The Court agrees.

While there are some circumstances where an attorney may be liable to a third-party non-client for negligence, such circumstances are not pled here.

In *Banco Popular North America v. Gandi*, 184 N.J. 161, 179-81 (2005), the New Jersey Supreme Court stated that an attorney may be liable to a third party when he invites that party's reliance on his work or knows or should know that the party will rely on the attorney's work.  It is simply not plausible that Zucker invited Plaintiff to rely on its calculations, nor is it plausible that Zucker should have known that Plaintiff would rely on its calculations.  Zucker represented a party adverse to Plaintiff.[25] Zucker had no duty to Plaintiff to accurately calculate any fees or costs associated with the foreclosure.

---

[25] *See Ogbin v. Fein, Such, Kahn & Shepard, PC,* No. 08-4138, 2009 U.S. Dist. LEXIS 46954 at *9-10 (D.N.J. May 29, 2009) (Cavanaugh, D.J.) (holding that law firm who was plaintiffs' adversary in foreclosure proceeding owed no duty to plaintiffs, as law firm could not have expected that plaintiffs would rely on law firm's representations about payoff amounts).

To the extent Plaintiff's claims are based on the allegedly incorrect calculations regarding recording fees, sheriff's fees and commissions, and interest in the draft payoff statement, the same conclusion obtains.  While Zucker sent Plaintiff the draft payoff statement itemizing the charges due and instructing how payments should be made (Compl. Ex. B), it is still not plausible that Zucker invited reliance on its calculations, nor is it plausible that Zucker should have known that Plaintiff would rely.  The letter accompanying the draft payoff statement clearly stated, "<u>You have no right to rely on the above figures unless they have been verified just prior to the date of payoff.</u>"  (Id.)  At the end of the letter, there is also a clear notice stating: "*THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*"  (Id.)  Under these circumstances, Plaintiff cannot pursue his negligence claim against Zucker as a matter of law.  Count IV fails to state a claim against M&T, MERS, or Zucker.  Accordingly, Count IV will be dismissed in its entirety.

**F.**

Finally, Count V alleges breach of the duty of good faith and fair dealing against M&T, MERS, and Zucker.[26]  To the extent this count is based on the allegations in paragraph 14, the claim must

---

[26] The careful reader will note that this Opinion does not discuss Counts II or III.  There is no Count II or Count III of the Complaint.  Count IV immediately follows Count I.

be dismissed for the reasons already discussed.

The good faith and fair dealing claim against Zucker also fails for an independent reason, namely Zucker had no such duty to Plaintiff. The duty of good faith and fair dealing is an implied duty in every *contractual* relationship. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey.").[27] However, Plaintiff does not (and cannot) allege that he had a contractual relationship with Zucker, who was M&T's attorney for the purpose of the potential foreclosure action. Without a contract, there is no duty of good faith and fair dealing,[28] therefore Plaintiff's good faith and fair dealing claim against Zucker must be dismissed.

## IV.

In light of the foregoing, the Court will dismiss the Complaint. However, Plaintiff will be granted leave to file a Motion to Amend the Complaint insofar as he wishes to assert claims not considered in this Opinion or claims that would not be barred by the legal holdings the Court has made herein. *See Phillips*, 515 F.3d at 245 (providing that plaintiffs whose claims are subject to

---

[27] *See generally* Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

[28] To the extent there may be an extra-contractual duty of good faith and fair dealing under New Jersey law, Zucker had no such duty for the reasons stated *supra* at Section III.E.

a Rule 12(b)(6) dismissal should be given an opportunity to amend

their complaints unless amendment would be inequitable or futile).

The Court will issue an appropriate Order.


Dated: September 1, 2009


                                    s/ Joseph E. Irenas
                                  **Joseph E. Irenas, S.U.S.D.J.**